**CIVIC COMMUNICATIONS CORPORA-TION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION, Appellee, Lamar Life Broadcasting Company, Dixie National Broadcasting Corporation, Communications Improvement, Inc., Intervenors.**

**No. 23953.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1972.

Decided April 6, 1972.

Mr. Earle K. Moore, New York City, for intervenor Communications Improvement, Inc.

Mr. Martin E. Firestone, Washington, D. C., was on the brief for appellant.

Mr. Joseph A. Marino, Counsel, F. C. C., with whom Messrs. Richard E. Wiley, Gen. Counsel at the time the brief was filed, and John H. Conlin, Associate Gen. Counsel at the time the brief was filed, were on the brief, for appellee. Mr. D. Baird MacGuineas, Counsel, F. C. C. at the time the record was filed, also entered an appearance for appellee.

Mr. Reed Miller, Washington, D. C., with whom Mr. Paul A. Porter, Washington, D. C., was on the brief, for intervenor Lamar Life Broadcasting Co.

Messrs. W. H. Borghesani, Jr., and Joseph F. Hennessey, Washington, D. C., entered appearances for intervenor Dixie National Broadcasting Corp.

Ms. Nancy K. Hussey entered an appearance for intervenor Communications Improvement, Inc.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

FAHY, Senior Circuit Judge:

Civic Communications Corporation, herein Civic, petitions for review of an order of the Federal Communications Commission released February 2, 1970.[1] The order denied Civic's petition to the Commission that it impound the profits of Lamar Life Broadcasting Company, herein Lamar, from its interim operation of WLBT(TV), Channel 3 at Jackson, Mississippi, during the pendency of various license proceedings.

I

An understanding of the competing considerations upon which the issue turns requires a review, however brief, of a rather unusual history of Commission proceedings and court litigation which antedate the current petition for review. In Office of Communication of United Church of Christ v. F.C.C., 123 U.S.App.D.C. 328, 359 F.2d 994 (1966), this court reversed the Commission's denial of standing of the United Church of Christ to challenge the renewal of La-

1. In re Lamar Life Broadcasting Co., 21 F.C.C.2d 277 (1907).

mar's license to operate Station WLBT(TV), and directed the Commission to hold a full evidentiary hearing on the question of such renewal. On the basis of such a hearing, the Commission renewed Lamar's regular license for the full three year term. We again reversed the decision of the Commission, in Office of Communication of United Church of Christ v. F.C.C., 138 U.S.App.D.C. 112, 425 F.2d 543 (1969), rehearing denied, 138 U.S.App.D.C. 120, 425 F.2d 551 (1969), because not supported by substantial evidence. In doing so we directed the Commission to invite applicants for the regular license. We did not, however, disqualify Lamar from filing a new application. We also directed the Commission to consider a plan for interim operation of the station pending completion of its hearing on the applications, and we held that the Commission could, if found to be in the public interest, permit Lamar to be an interim operator. We also ruled:

> The Commission is free to consider whether net earnings of the licensee should be impounded by the Commission pending final disposition of this license application.

138 U.S.App.D.C. at 119, 425 F.2d at 550.

On December 5, 1969, in compliance with our last cited decision, the Commission issued an order inviting new applicants for authorization to operate on Channel 3, with Lamar permitted to apply but required, in conformity with this court's mandate, "to take its place among competing applicants." [2] The Commission order also provided:

> We believe that it is best to reserve judgment on the question of establishing an interim operation and the disposition of net earnings until such time as all applicants for Channel 3, Jackson, are before us. Therefore, we will permit Lamar to continue operation of the station on a temporary basis, until after the cut-off date for new applications. [footnote omitted].

At that time, we will establish an interim operation for the duration of the proceedings. . . . We do not preclude the possibility that a non-applicant for the regular license will come forward to provide another alternative for an interim operation. See Oak Knoll Broadcasting Corp., FCC 64–665, 2 Pike and Fischer, R.R. 2d 1011 (1964).

20 F.C.C.2d at 636. By the same order of December 5, 1969, as required by our decision, the Commission vacated its earlier grant to Lamar of its renewal application.

A few days later, December 10, 1969, Civic, a competing applicant for the regular license, petitioned the Commission to impound Lamar's profits from December 5, 1969, until the selection of an interim operator. Civic elaborated upon its position that were Lamar allowed to retain the profits in excess of a fair return on the lucrative operation, Lamar would have significant and unfair competitive advantages over other applicants in the proceedings for the regular license. The Commission denied this petition February 2, 1970. In so doing the Commission stated:

> We fail to see how any significant disadvantage will accrue to Civic or any other applicant, or any corresponding advantage inure to Lamar, by permitting it to retain profits during this short prehearing period. We do not anticipate the delay in reaching this matter hypothesized by Civic. As we stated on our Order of December [5], 1969, we will make a determination in this regard when we dispose of the question as to an interim authorization, not, as suggested by Civic, when the interim operator begins broadcasting. We see no prejudice resulting from our action. Moreover, by delaying a decision as to this question until after the cut-off date for filing competing applications has passed, we shall have the benefit of being able to view all competing appli-

---

2. In re Lamar Life Broadcasting Co., 20 F.C.C.2d 635 (1969).

cations, including those for interim authorizations and suggestions for disposition of profits. 21 F.C.C.2d at 280. It is from this denial that Civic appeals.

## II

The Commission's order of December 5 contemplated that applicants for the interim license would come forward, and that these might include applicants not also applying for the regular license.[3] Three such interim applications were filed, including Lamar and intervenor Communications Improvement, Inc. (CII), a nonprofit organization not applying for the regular license. After processing these applications the Commission on September 8, 1970, adopted an order granting interim operating authority to CII,[4] based largely on the fact that since CII was not an applicant for a regular license, grant of interim operation to it avoided prejudice to the applicants competing for the regular license, citing Community Broadcasting Co., Inc. v. F.C.C., 107 U.S.App.D.C. 95, 274 F.2d 753 (1960).[5] Another important reason for the grant to CII was that its profits were to be devoted to nonprofit educational broadcasting in Mississippi.

With this decision as to interim operation Lamar's authority to operate would have ceased but for the fact that the Commission stayed the effect of its decision until 30 days after this court acted on Lamar's motion for stay of the Commission's decision. Lamar did move in this court for the stay and for an immediate decision on the merits. On March 17, 1971, this court affirmed the

September 8 order of the Commission and simultaneously dismissed as moot Lamar's motion for a stay. As provided by the Commission's stay, thirty days thereafter, or April 17, CII was not ready to assume interim operations. Consequently, the Commission permitted Lamar to continue until CII was able to take over, but impounded post-April 17 profits for eventual distribution by CII, as it previously had specified for any profits from its own operations. CII actually began interim operations June 14, 1971.

## III

Appellant Civic and intervenor CII now press in this court their position that the Commission should have impounded Lamar's profits from either June 20, 1969, when this court filed its second decision reversing the renewal of Lamar's license, or from September 5, 1969, when this court denied rehearing, or from December 5, 1969, when the Commission invited the filing of new applications for the channel.

█ The total time relevant to the impounding problem may reasonably be divided into three periods, as follows:[6] (1) from December 5, 1969 to September 8, 1970, comprising the period Lamar was permitted to remain on the air until CII was awarded interim operation; (2) from September 8, 1970 to April 17, 1971, during which period Lamar continued to operate on the channel while contesting the interim award of September 8 to CII, including a stay by the Commission of its September 8 order until 30 days after this court acted on

---

3. The cutoff day for new applications had been fixed in the December 5 order to be 60 days from its release date, which would arrive February 5, 1970. Five applicants filed for the regular license, including Civic and Lamar. All were designated for comparative hearing.

4. In re Lamar Life Broadcasting Co., 26 F.C.C.2d 100 (1970).

5. "The lack of prejudice is of controlling comparative significance and outweighs

all other comparative factors . . . ." 26 F.C.C.2d at 108.

6. We do not think that the court is called upon to consider the issue of impounding of profits which might have been earned prior to December 5, 1969, since appellant in its December 10 application requested only that profits earned after December 5, 1969, be impounded, and this was the only period considered by the Commission in its order released February 2, 1970.

Lamar's motion for stay of the September 8 order; and (3) the period after April 17, 1971, until June 14, 1971, when CII took over interim operations.

For the third period above, the profits of Lamar's operations already have been ordered impounded, so no impounding issue remains as to that period. As to the first period, from December 5, 1969 to September 8, 1970, we do not find reason to reverse the order of February 2, 1970, denying the impounding relief sought by Civic. The reason for the denial, as stated by the Commission, and as emphasized in its brief in this court, was that the Commission could see no significant disadvantage to any other applicant, or any corresponding advantage to Lamar, "by permitting it to retain profits during this short prehearing period." The Commission said no delay was anticipated, continuing: ". . . we will make a determination in this regard when we dispose of the question as to an interim authorization, not, as suggested by Civic, when the interim operator begins broadcasting. We see no prejudice resulting from our action." This decision was not, as Civic contends it was, in conflict with our mandate upon reversal of the Commission's order granting renewal of Lamar's license. 138 U.S.App.D.C. at 119, 425 F.2d at 550. We there explicitly did not preclude the Commission, if it found it to be in the public interest, to permit Lamar "to carry on interim operations." While we added that "The Commission is free to consider whether net earnings of the licensees should be impounded by the Commission pending final disposition of this license application," this was not a direction to impound; and while it might well be that it would have been reasonable for the Commission to have deprived Lamar of its net profits during this period we do not find it to have been unreasonable for the Commission not to have done so for the reasons it assigned, considered in light of Lamar's performance obligation during that period.

## IV

This leaves for consideration the middle period, from September 8, 1970 to April 17, 1971. The chief reason assigned by the Commission for not ordering any impounding in its decision of February 2, 1970, does not apply to this period. It was not within the "short prehearing period" envisaged by the Commission before it disposed of the question of interim operation. True, what is a short period in the course of working out the problems involved in this case is relative; but to extend the idea of a "short prehearing period" from December 5, 1969, to April 17, 1971, seven months beyond the date of September 8, 1970, when the Commission decided upon an interim operator, during which seven months Lamar was seeking to upset that decision, gives us pause. While this delay was not that of the Commission, it nevertheless seems to have substantially increased the period of Lamar's operation beyond that contemplated by the Commission when it denied all impounding relief by its order of February 2, 1970. The delay also made more doubtful the continued validity of the Commission's view, stated in that order, that failure to impound during this period would not place other applicants for the permanent license, then still to be determined, at a "significant disadvantage," with corresponding advantage to Lamar. Not only is a time factor involved but Lamar's operations during this additional period, though with the permission of the Commission, was due to Lamar's contest in court of the award by the Commission to CII of the right to interim operation.

We accordingly conclude that the reasons assigned by the Commission for denial of all impounding in its February 2, 1970 decision do not necessarily support application of the order to Lamar's operations from September 8, 1970 to April 17, 1971. We accordingly modify, by vacating, the order insofar as it covers that period and remand the case to the Commission for reconsideration, under

the standard of public interest, of the issue whether or not the net profits of Lamar assignable to the period September 8, 1970 to April 17, 1971, should have been impounded. We assume that if ordered impounded these profits would be treated the same way as the profits for the period April 17, 1971—June 14, 1971, though we do not necessarily preclude a different disposition in the public interest. Otherwise the order of February 2, 1970 is affirmed.

It is so ordered.